DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated case is before the court on appeal of the November 18, 2004 judgment of the Wood County Court of Common Pleas granting summary judgment, in a case involving a real estate transaction, to defendants-appellees A.A. Green Realty, Inc., Allen Green, and Wayne Mumford.[1] For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} The facts of this case will be presented in a light most favorable to appellants. In September 2001, appellants, Kevin and Christy Weiker, desiring to purchase a home, entered into an agency agreement with appellees, A.A. Green Realty, Inc. and Wayne Mumford.
 {¶ 3} On September 15, 2001, appellants were shown, by Mumford, several properties in Weston, Ohio, including the subject residence. After an offer on another home was rejected, appellants, on September 29, 2001, returned to the property. Kevin Weiker denies that he ever inspected the crawl space.
 {¶ 4} Thereafter, Mumford and appellants returned to their home where they reviewed certain documents pertaining to the property's condition. Weiker reviewed, initialing the bottom of each page, a Relocation Home Inspection Report which was prepared for Cedant Mobility Services Corp., the seller and relocation company that purchased the prior owner's home. The report, dated February 29, 2000, indicated that there was evidence of ongoing water penetration in the crawl space. The report further provided:
 {¶ 5} "Structure: Foundation
 {¶ 6} "Deterioration/cracking noted at the right center corner of the house, further evaluation needed by a structural engineer.
 {¶ 7} "Structure: Beams
 {¶ 8} "Deteriorated/damaged beams noted at the dwelling, further evaluation needed by a structural engineer.
 {¶ 9} "Structure: Joists/Trusses
 {¶ 10} "Damaged/Deteriorated joists noted at the dwelling, further evaluation needed by a structural engineer.
 {¶ 11} "Attic: Roof Framing
 {¶ 12} "Deteriorated/bowed rafters noted at the attic, further evaluation needed by a structural engineer."
 {¶ 13} In his deposition, Weiker stated that Mumford pointed out a portion of a Relocation Structural Evaluation Report, completed by the same company, dated February 25, 2000, which stated that "[t]he dwelling (s) has/have been found to the structurally sound at the time of inspection." In the same report, the engineer noted that "[m]ost of the crawl space at front of house was not accessible" and that it should be made accessible for inspection.
 {¶ 14} Weiker does dispute, however, that he was permitted to read the report or reports in full or that he was made aware that they indicated that the home had any structural problems. Although Weiker claims that he was not permitted to read it, Weiker was also shown and initialed a Wood Destroying Inspect Report, dated February 29, 2000, which indicated that there was evidence of active infestation of powder post beetles and that "[d]amage and any corrective action should be evaluated by a qualified contractor to determine the extent of the damage and need for repair." The report also stated that there was limited access to the crawl space due to standing water. Weiker also initialed each page of an Orkin Termite Service Report indicating that the crawl space had been treated for powder post beetles on March 9, 2000.
 {¶ 15} Weiker testified that he was shown one of two versions of a Residential Property Disclosure Form. One version, dated March 15, 2000, indicates that there was some dampness in the crawl space. The March 15 report also disclosed the active power post beetle infestation and Orkin treatment. After reviewing the documents, appellants made an offer on the property which was accepted.
 {¶ 16} On October 5, 2001, appellants signed a purchase agreement to purchase the property for $68,000. The contract also provided that the property would be sold "in its AS IS condition" subject to an inspection "to buyers satisfaction."
 {¶ 17} Appellants contracted with The Home Team Inspection Service to perform the inspection. Home inspector, Lori Cannon, came to the property on October 22, 2001. According to her affidavit, on that date, she was not able to inspect the crawl space "due to standing water at the access entry." A copy of this report was sent to and received by appellants. On October 26, 2001, Cannon returned to the home to inspect the crawl space. According to Cannon, she told Mumford, who was present at the inspection, that the foundation had been compromised. On October 27, 2001, Cannon faxed a copy of the addendum report to Mumford, who failed to deliver a copy to appellants. The addendum provided:
 {¶ 18} "Addendum:
 {¶ 19} "The above property was re-inspected to check the crawlspace area that was not accessible at the time of the original inspection.
 {¶ 20} "Foundation:
 {¶ 21} "The foundation was constructed of concrete block and brick. A single inspection cannot determine whether movement of a foundation has ceased. Any cracks should be monitored regularly. Brick foundation walls have been broken through to allow for plumbing and heating ducts to be run.
 {¶ 22} "Crawlspace:
 {¶ 23} "The crawl space was accessible at the time of the re-inspection, and was not dry. There was a puddle of water at the entry of the crawlspace and the soil through out the crawlspace was damp. A crawl space should have a polyvinyl vapor barrier covering the surface and should be adequately vented at all time. Cross ventilation will help dry out the crawlspace. It was not possible to view the front of the crawlspace due to the plumbing and heating ducts.
 {¶ 24} "Floor structure:
 {¶ 25} "The visible floor structure consisted of both plywood subfloors in the new addition and standard boards in the original portion of the home. There were two 10X10-inch wood center beams and brick walls for load bearing support. These are the foundation walls that have been broken through to allow for plumbing and heating duct to be run. There were 42X4 being used as supports under the bathroom and bedroom on the first floor. There is a floor joist under the kitchen area that is also supporting floor joist that is running perpendicular to it. The joists are not level with one another, which is why there is a slope or hump in the floor in this area.
 {¶ 26} "Summary:
 {¶ 27} "Due to all of the above factors it is the opinion of this inspector that a professional contractor or structural engineer should be consulted to determine i[f] the structure is sound. There is a water problem in the crawlspace and foundation shows signs of having been compromised at one time or another.
 {¶ 28} "Let it be duly noted that the seller gave the buyer a copy of structure inspection that states the structure is sound."
 {¶ 29} When asked by appellants, Mumford indicated that everything in the crawl space went great and that there were "no problems." Appellants never received a copy of the addendum report prior to the November 5, 2001 closing.
 {¶ 30} Following the closing, Weiker contracted with a company to have a perimeter drain installed around to house to address the moisture in the crawl space; however, at that point the ground was too frozen to complete the work. On February 15, 2002, appellants discovered that the support for the main floor had let go and the house had shifted. Appellants received a repair estimate of $74,600. Thereafter, appellants met with Lori Cannon and discovered the results of the October 26, 2001 inspection.
 {¶ 31} On February 24, 2003, appellants commenced this action against appellees, A.A. Green Realty, Inc., Allen Green, and Wayne Mumford, Cedant Mobility Services Corp., Kathryn Long, the seller's agent, and Thomas and Cynthia Wagner, prior owners of the property. The complaint alleged that appellees fraudulently misrepresented the findings of the October 26, 2001 inspection of the crawl space and fraudulently concealed the written report regarding same. Appellants alleged that they purchased the residence in reliance on the information.
 {¶ 32} On September 21, 2004, appellees filed a motion for summary judgment.[2] In their motion, appellees argued that because appellants already had knowledge of the pest and moisture problem in the crawl space, appellants' fraudulent misrepresentation claim was deficient because they could not prove that Mumford's alleged acts or omissions were material or that appellants relied on his "conflicting" and "vague" statements. Further, appellees relied on the appellants' expert witness report that stated: "The home has serious structural problems, including deterioration and breakage of structural members, as the result of both rot and powder post beetles." In response, appellants argued that Mumford fraudulently concealed Lori Cannon's findings regarding the crawl space and intentionally deceived appellants by permitting them to read only favorable portions of various reports regarding the property's condition.
 {¶ 33} On November 18, 2004, the trial court granted appellees' motion for summary judgment finding that although Mumford failed to disclose the addendum to The Home Team Inspection Service's report, the content of the addendum "did not contain any material information that was not already known to the Weikers." Appellants commenced this appeal raising the following assignment of error:
 {¶ 34} "The trial court erred when it granted summary judgment."
 {¶ 35} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs. (1993),87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment.Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 36} Appellants' sole assignment of error disputes the trial court's finding that the addendum that Mumford failed to deliver did not contain any material information that was not already known to appellants. Particularly, appellants contend that even if they had prior knowledge of the pest infestation and moisture in the crawl space, they had no knowledge that there was structural or foundation damage to the property.
 {¶ 37} In order to maintain a successful fraudulent misrepresentation claim, appellants were required to prove the following elements:
 {¶ 38} "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance."Cardi v. Gump (1997), 121 Ohio App.3d 16, 22.
 {¶ 39} Regarding the first element, we agree that, as the trial court stated, a reasonable juror could conclude that based upon the fiduciary relationship of a buyer and agent, Mumford improperly failed to disclose to appellants The Home Team Inspection Service report addendum or Lori Cannon's comments. However, in order to be actionable the representation or concealment of fact must be material. A fact is material "when it would be likely, under the circumstances, to affect the conduct of a reasonable person with reference to the transaction in question." Van Camp v. Bradford (1993), 63 Ohio Misc.2d 245,255.
 {¶ 40} In the present case, Weiker stated in his deposition that he hired an inspection company "to check on the repairs that were shown to be done."[3] Weiker stated that at the time of closing Mumford indicated that everything looked "fine" but that the garage doors were not operating yet.
 {¶ 41} On October 22, 2001, Cannon first inspected the house with appellants present. Cannon was not able to inspect the crawl space due to standing water at the access entry and the report noted that the crawl space "was not dry." In addition to physically viewing the water in the crawl space, the Relocation Home Inspection Report indicated that there was evidence of ongoing water penetration in the crawl space. The Wood Destroying Insect Report also indicated that there was standing water in the crawl space.
 {¶ 42} Regarding the existence of the powder post beetles, appellants had knowledge of the infestation from the Orkin report and the Wood Destroying Insect Report. The latter report, initialed by Kevin Weiker, warned that: "[I]t should be understood that some degree of damage, including hidden damage, may be present." The Orkin report clearly stated, at the top of the agreement that: "[T]his contract does not provide for the repair of damage caused by powder post beetles or old house borers."
 {¶ 43} Further, appellants' expert, Gary Wilhelm, stated in an affidavit that the structural problems of the house were caused by "both rot and powder post beetles." The moisture and powder post beetle problems were already known to appellants. Cannon's October 27, 2001 addendum listed the water problem in the crawl space; thus, this is not new or "material" information. The report also recommended that a structural engineer be consulted. Appellants received this recommendation in September 2001, in the Relocation Home Inspection Report and in the Wood Destroying Insect Infestation Report. The only conceivably new information contained in the addendum was that the brick foundation had been broken through to allow for plumbing and heating ducts to be run. Based on our review of the addendum report, we must conclude that the report was not "material" in the sense that, with the information already possessed by appellants, it would have affected their conduct.
 {¶ 44} Based on the foregoing, we find that appellants failed to present evidence sufficient to create an issue of fact as to their fraudulent misrepresentation claim and that the trial court did not err in granting summary judgment to appellees. Appellants' assignment of error is not well-taken.
 {¶ 45} On consideration whereof, we find that substantial justice was done the parties complaining, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.
Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Skow, J., concur.
[1] The action was originally appealed on December 15, 2004, but was dismissed by this court as not being a final and appealable order as required under Civ.R. 54(B). On September 28, 2005, the trial court granted appellant's motion for a Civ.R. 54(B) determination and a second notice of appeal was filed.
[2] At this point, defendants Thomas and Cynthia Wagner had been voluntarily dismissed from the lawsuit and defendant, Kathryn Long, had been granted summary judgment. Appellants' claim against Cedant Mobility Services Corp. is still pending in the trial court.
[3] Attached to Plaintiffs Exhibit 2, which included the Relocation Structural Evaluation Report and the Relocation Home Inspection Report, was a letter from prior owner, Thomas Wagner, indicating the repairs that had been completed.